**E-filing**    530

1  **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2  Name _SANDERS,   RICKY_ _____ _R._
        (Last)        (First)        (Initial)

3  Prisoner Number _V-26524_

4  Institutional Address _P.O. BOX 706_

5  _____ SOLEDAD, CA 93960-0705

6  ==================================================

7  UNITED STATES DISTRICT COURT
   **NORTHERN DISTRICT OF CALIFORNIA**

8  RICKY RENEE SANDERS

   (Enter the full name of plaintiff in this action.)    CV  08  2485

9

10 vs.                          Case No. _____
   JAMES E. TILTON                (To be provided by the clerk of court). **PJH**

11 _____

                                **PETITION FOR A WRIT**
12 _____                      **OF HABEAS CORPUS**
                                            **(PR)**
13 _____

14 (Enter the full name of respondent(s) or jailor in this action)

                                EVIDENTIARY HEARING REQUESTED
15

16 ==================================================
   Read Comments Carefully Before Filling In

17 When and Where to File

18    You should file in the Northern District if you were convicted and sentenced in one of these

19 counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20 San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21 this district if you are challenging the manner in which your sentence is being executed, such as loss of

22 good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23    If you are challenging your conviction or sentence and you were not convicted and sentenced in

24 one of the above-named fifteen counties, your petition will likely be transferred to the United States

25 District Court for the district in which the state court that convicted and sentenced you is located. If

26 you are challenging the execution of your sentence and you are not in prison in one of these counties,

27 your petition will likely be transferred to the district court for the district that includes the institution

28 where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS        - 1 -

1  Who to Name as Respondent

2      You must name the person in whose actual custody you are.  This usually means the Warden or

3  jailor.  Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced.  These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  A.  INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11      1.  What sentence are you challenging in this petition?

12      (a)  Name and location of court that imposed sentence (for example; Alameda

13      County Superior Court, Oakland):

    ALAMEDA COUNTY SUPERIOR COURT    OAKLAND

14

15      Court        Location

16      (b)  Case number, if known  No. C144018&cent;

17      (c)  Date and terms of sentence  1/21/2004 - 9yrs. 8mos.

18      (d)  Are you now in custody serving this term?  (Custody means being in jail, on

19      parole or probation, etc.)    Yes __X__    No _____

20      Where?

    CTF-NORTH, SOLEDAD

21      Name of Institution:  P.O. BOX 705; SOLEDAD, CA 93960-0705

22      Address: _____

23      2.  For what crime were you given this sentence?  (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known.  If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  § 459, 211, 236, 136.1(b)(2), 591, 12022.6, 12022

27

28

PET. FOR WRIT OF HAB. CORPUS    - 2 -

3. Did you have any of the following?

    Arraignment:                    Yes __X__     No _____

    Preliminary Hearing:          Yes __X__     No _____

    Motion to Suppress:          Yes __x__     No _____

4. How did you plead?

    Guilty _____    Not Guilty __x__   Nolo Contendere _____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury __X__    Judge alone_____   Judge alone on a transcript _____

6. Did you testify at your trial?          Yes __X__     No _____

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment           Yes __x__     No _____

    (b)    Preliminary hearing     Yes __X__     No _____

    (c)    Time of plea          Yes __X__     No _____

    (d)    Trial              Yes __x__     No _____

    (e)    Sentencing          Yes __X__     No _____

    (f)    Appeal             Yes __x__     No _____

    (g)    Other post-conviction proceeding   Yes _____     No __x__

8. Did you appeal your conviction?      Yes __x__     No _____

    (a)    If you did, to what court(s) did you appeal?

        Court of Appeal          Yes __x__  No _____

        Year: _2006_    Result:_STAY §236 & §591 PC  (Exhibit 1)_

        Supreme Court of California   Yes __x__  No _____

        Year: _2006_    Result _DENIED WITHOUT PREJUDICE (Exhibit 2)_

        Any other court         Yes _____  No _____

        Year: _____    Result:_____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS      - 3 -

| 1 | | | petition? | Yes __X__ | No_____ |

1        petition?      Yes __X__    No_____

2      (c)    Was there an opinion?      Yes __X__    No_____

3      (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                          Yes _____    No__X__

5          If you did, give the name of the court and the result:

6          _____

7          _____

8   9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9   this conviction in any court, state or federal?      Yes __X__    No_____

10          [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11   challenged the same conviction you are challenging now and if that petition was denied or dismissed

12   with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13   for an order authorizing the district court to consider this petition. You may not file a second or

14   subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15   U.S.C. §§ 2244(b).]

16      (a)    If you sought relief in any proceeding other than an appeal, answer the following

17            questions for each proceeding. Attach extra paper if you need more space.

18          I.      Name of Court: _ALAMEDA COUNTY SUPERIOR COURT_____

19                 Type of Proceeding: _HABEAS CORPUS_____

20                 Grounds raised (Be brief but specific):

21                 a._IAC - TRIAL COUNSEL_____

22                 b._IAC - APPELLATE COUNSEL_____

23                 c._____

24                 d._____

25                 Result: DENIED (EXHIBIT 3)_____Date of Result: 3/27/2007

26          II.     Name of Court: _CA COURT OF APPEALS - FIRST APP. DISTRICT

27                 Type of Proceeding: _HABEAS CORPUS_____

28                 Grounds raised (Be brief but specific):

1      a. IAC - TRIAL COUNSEL

2      b. IAC - APPELLATE COUNSEL

3      c.

4      d.

5      Result: DENIED     (Exhibit 4)     Date of Result: 7/14/2007

6      III.     Name of Court: CA SUPREME COURT

7      Type of Proceeding: HABEAS CORPUS

8      Grounds raised (Be brief but specific):

9      a. IAC - TRIAL COUNSEL

10     b. IAC - APPELLATE COUNSEL

11     c.

12     d.

13     Result: DENIED     (Exhibit 5)     Date of Result: 1/16/2008

14     IV.     Name of Court:

15     Type of Proceeding:

16     Grounds raised (Be brief but specific):

17     a.

18     b.

19     c.

20     d.

21     Result:                              Date of Result:

22     (b)     Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                                          Yes _____     No  X

24             Name and location of court:

25     B. GROUNDS FOR RELIEF

26             State briefly every reason that you believe you are being confined unlawfully.  Give facts to

27     support each claim.  For example, what legal right or privilege were you denied?  What happened?

28     Who made the error?  Avoid legal arguments with numerous case citations.  Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS          - 5 -

1   need more space. Answer the same questions for each claim.

2          [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3   petitions may be dismissed without review on the merits.  28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467,  111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5          Claim One:  TRIAL COUNSEL ADVISED TO ADMIT A PRIOR SERIOUS VIOLENT

6   FELONY BASED ON A FORGERY CONVICTION.

7          Supporting Facts: I WAS CHARGED WITH VIOLATION OF PENAL CODE §667.5(b),

8   BASED ON A FORGERY CONVICTION. COUNSEL ADVISED ME TO WAIVE JURY TRIAL AND

9   ADMIT TO 667.5(b), BASED ON A FORGERY CONVICTION. THIS ADMISSION RESTRICT

10  ME TO A FIFTEEN PERCENT TIME REDUCTION OF SENTENCE. (EXTRA PAGE ATTACHED)

11         Claim Two: TRIAL COUNSEL FAILED TO MOVE FOR DISMISSAL OF §211 & 236

12  COUNTS PURSUANT TO P.C. 1118.1

13         Supporting Facts: TRIAL COURT FOUND THAT PETITIONER DIDN'T APPEAR TO

14  HAVE A WEAPON DURING CRIME & INTENT WAS INITIALLY TO COMMIT A 459 WITH

15  GRAND THEFT AS THE OBJECTIVE (RT 1/21/04; 19-20)  THE COURT OF APPEALS

16  FOUND THE OBJECTIVE OF STEALING MERCHANDISE FROM THE STORE, (PAGE ATTACHED)

17         Claim Three: APPELLATE COUNSEL FAILED TO RAISE THE CLAIM THAT THERE IS

18  INSUFFICIENT EVIDENCE THAT I HAD THE SPECIFIC INTENT (EXTRA PAGE ATTACHED)

19         Supporting Facts: I INCORPORATE THE **SUPPORTING** FACTS SET FORTH IN CLAIM

20  TWO, IN ADDITION TO, I SET FORTH THE FOLLOWING FACTS IN SUPPORT OF THIS

21  CLAIM:  AFTER THE PEOPLE RESTED THEIR CASE IN CHIEF, TRIAL COUNSEL'S

22  MOTION TO DISMISSING COUNTS OF §136.1(b)(2), (EXTRA PAGE ATTACHED)

23         If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25  _____

26  _____

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS          - 6 -

Supporting Facts to Claim One; (cont.): FOR WORK/GOOD TIME CREDIT,
AS OPPOSED TO THE FIFTY PERCENT I AM ENTITLED TO.  THE FORGERY IS NOT A
SERIOUS VIOLENT FELONY FOR THE PURPOSES OF 667.5(B).  THEREFORE IT IS IAC
OF TRIAL COUNSEL, TO ADVISE ME TO ADMIT VIOLATION OF §667.5(b) PC, WHEN
FORGERY IS NOT A SERIOUS VIOLENT FELONY FOR §667.5(b) PC PURPOSES.

Supporting Facts for Claim Two; (cont.):  WAS DISTINCT IN NATURE FROM
STEALING FROM THE INDIVIDUAL EMPLOYEES. (EXHIBIT 1, 15-16). BASED ON REASONABLE
DOUBT STANDARD, THERE IS INSUFFICEIENT EVIDENCE THAT I HAD KNOWLEDGE OF,
CHOSE TO PARTICIPATE IN OR CONSENTED TO CABRELLIS AND THE GUNMAN'S DECISION
TO ROB THE VICTIMS. VICTIM DIVJAK, LOOKING OUT THE RESTROOM WINDOW, SAW
ME BACKING A U-HAUL TRUCK INTO A PARKING SPACE.(RT. 2024 &;2040) ABOUT 20
MINS. LATER DIVJAK & VICTIM ANTONELI, WERE BEHIND THE COUNTER WHEN A MAN
WITH NO FACIAL HAIR, BARGED INTO THE STORE WITH A PISTOL.(RT. 615-17; RT.2024-
26) THE MAN DIRECTED THE VICTIMS INTO THE BATHROOM, WHERE HE TOOK THEIR
WALLETS.(RT. 2032-33) IN THE BATHROOM THEY WERE JOINED BY CABRELLIS. CABRELLIS
WAS FRIENDLY AND LESS HARSH THAN THE GUNMAN, BUT STILL THREATENING.(RT.2037;
RT.2067; RT.2071; RT.2099) DURING THE HOUR AND A HALF, CABRELLIS WAS INSTRUCTING
"SONNY" AND "COUSIN" WHAT TO MOVE OUT.(RT.2057-59; RT.2091-98; RT.620-23)
DIVJAK RECOGNIZED ME AS I ROLLED OUT A 51" TV TOWARDS THE BACK DOOR, AS
THE DRIVER OF THE U-HAUL TRUCK, FROM MY UNIQUE GOATEE.(RT.2056-59; RT.2073-
74; RT.2122) DIVJAK HAS ALWAYS MAINTAINED THAT THERE WERE THREE SUSPECTS.(RT.997;
RT.1020; RT.1058; RT.1076; RT.2167). SINCE THERE IS INSUFFICIENT EVIDENCE
THAT I HAD THE SPECIFIC INTENT REQUIRED FOR ROBBERY, OR THE KNOWLEDGE AND
INTENT REQUIRED TO CONSTITUTE FALSE IMPRISONMENT BY VIOLENCE, IT WAS IAC
OF TRIAL COUNSEL, TO FAIL TO MOVE FOR DISMISSAL OF THE ROBBERY AND FALSE
IMPRISONMENT COUNTS.

CLAIM THREE; (CONT.): REQUIRED FOR ROBBERY, OR KNOWLEDGE AND INTENT

- 6(b) -

REQUIRED TO PARTICIPATE IN FALSE IMPRISONMENT BY VIOLENCE OR ATTEMPTS TO
DISSUADE WITNESSES, IS A VIOLATION OF MY STATE AND FEDERAL CONSTITUTIONAL
RIGHT TO THE EFFECTIVE AND ADEQUATE ASSISTANCE OF APPELLATE COUNSEL.

Supporting Facts for Claim Three; (cont.): BASED ON INSUFFICIENCY
OF THE EVIDENCE WAS DENIED.(CT.264) IN MY DIRECT APPEAL, APPELLATE COUNSEL
FAILED TO RAISE ANY ISSUES BASED ON THE INSUFFICIENCY OF EVIDENCE. BASED
ON THE FACTS AND THE REASONABLE DOUBT STANDARD, THERE IS INSUFFICIENT EVIDENCE
THAT I HAD KNOWLEDGE OF, CHOSE TO PARTICIPATE IN OR CONSENTED TO CABRELLIS
AND THE GUNMAN'S DECISION TO ROB THE VICTIMS. BY EXTENSION, THERE IS INSUFFICIENT
EVIDENCE THAT I HAD KNOWLEDGE OF, CHOSE TO PARTICIPATE IN OR CONSENTED
TO CABRELLIS AND THE GUNMAN'S FALSE IMPRISONMENT BY VIOLENCE OR ATTEMPTS
TO DISSUADE THE WITNESSES. THEREFORE IT WAS IAC OF APPELLATE COUNSEL TO
FAIL TO RAISE ANY INSUFFICIENCY CLAIMS REGARDING THE 211, 236,136.1(b)(2)
COUNTS.

Claim Four: I WAS DEPRIVED OF FEDERAL AND STATE CONSTITUTIONAL RIGHTS
TO A JURY TRIAL AND DUE PROCESS WHEN THE TRAIL COURT IMPOSED CONSECUTIVE
SENTENCES BY RELYING ON AGGRAVATING FACTORS FOUND NEITHER BY A JURY, NOR
BEYOND A REASONABLE DOUBT.

Supporting Facts: AFTER BEING FOUND GUILTY IN A JURY TRIAL. I WAS
SENTENCED TO 8 mos. PLUS A 4 mo. ARMING ENHANCEMENT (hereon ARM. ENH.)
TO RUN CONSECUTIVE WITH OTHER COUNTS (hereon CT.), FOR CT. ONE; §459 PC
OF CAMBRIDGE SOUNDWORKS. 3yrs. PLUS 1yr. ARM. ENH. ON CT. TWO; 211 OF AN
EMPLOYEE OF CAMBRIDGE SOUNDWORKS. 1yr. PLUS 4mos. ARM. ENH. ON CT. THREE;
211 OF A SECOND EMPLOYEE OF CAMBRIDGE SOUNDWORKS, TO RUN CONSECUTIVE TO
CT. TWO. 4mos. CONSECUTIVE TO THE SENTENCE OF CT. ONE, FOR THE EXCESSIVE
LOSS ENHANCEMENT. CT. FOUR; FALSE IMPRISONMENT, THE COURT IMPOSED 8mos.
PLUS 4mos. ARM. ENH. CONSECUTIVE. THE TOTAL TERM TO RUN CONCURRENTLY TO

- 6(c) -

THE UNDERLYING SENTENCE. THE SAME SENTENCE WAS IMPOSED FOR CT. FIVE; FALSE
IMPRISONMENT. CT. SIX; ATTEMPT TO DISSUADE A WITNESS, 8mos. PLUS 4mos.
ARM. ENH. TO RUN CONSECUTIVELY. THE SAME SENTENCE WAS GIVEN FOR CT. SEVEN;
ATTEMPT TO DISSUADE A WITNESS, WITH AN ARM. ENH.  8mos. CONSECUTIVE ON
CT. EIGHT; CUTTING A TELEPHONE LINE.  THE COURT SENTENCED ME TO 9yrs.,
8mos. IN PRISON. TO JUSTIFY THE CONSECUTIVE SENTENCES, THE TRIAL COURT
FOUND THE FOLLOWING 12 AGGRAVATING CIRCUMSTANCES, BY A PREPONDERANCE OF
THE EVIDENCE STANDARD: (1) THE NATURE OF THE CRIMES INVOLVED THE THREAT
OF GREAT BODILY INJURY TO THE VICTIMS, AND CONSTITUTED ACTS OF CRUELTY,
VICIOUSNESS AND CALLOUSNESS; (2) ALTHOUGH I DID NOT APPEAR TO HAVE BEEN
PERSONALLY ARMED WITH A WEAPON, A FIREARM WAS USED IN THE COMMISSION OF
THE CRIME, AND I WAS PRESENT WHEN THE WEAPON WAS USED TO THREATEN VICTIM
ANTONELLI AND OBTAIN HIS POLO SHIRT, AND WHEN OTHER THREATS WERE MADE (Rule
4.421(a)(2)); (3) I WAS THE SOLE DRIVER OF THE GET AWAY VEHICLE THAT CONTAINED
THE GUN, POLO SHIRT AND WALLETS OF THE VICTIMS, (4) THE VICTIMS WERE PARTICULARLY
VULNERABLE WHEN THEY WERE TIED UP (Rule 4.421(a)(3)); (5) I THREATENED
WITNESSES TO UNLAWFULLY PREVENT OR DISSUADE WITNESSES FROM TESTIFYING OR
SUPPORT PERJURY OR OTHERWISE INTERFERE WITH THE JUDICIAL PROCESS (Rule
4.21(a)(6); (6) I "MADE REPEATED THREATS TO THE VICTIMS AS MERCHANDISE
WAS LOADED AND WAS CONVICTED OF 136.1(b)(3) OF THE PENAL CODE"; (7) THE
MANNER IN WHICH THE CRIME WAS CARRIED OUT INDICATES PLANNING, SOPHISTICATION
OR PROFESSIONALISM "OF THE HIGHEST KIND" (Rule 4.421(a)(8); (8) THE CRIME
INVOLVED ATTEMPTED AND ACTUAL TAKING AND DAMAGE OF GREAT MONETARY VALUE
(Rule 4.421(a)(9); (9) I ENGAGED IN VIOLENT CONDUCT WHICH INDICATES A SERIOUS
DANGER TO SOCIETY (Rule 4.421(b)(1)); (10) MY PRIOR CONVICTIONS AS AN ADULT
ARE NUMEROUS OR OF INCREASING SERIOUSNESS; (11) I WAS ON PROBATION OR PAROLE
WHEN THE CRIME WAS COMMITTED; (12) MY PRIOR PERFORMANCE ON PROBATION OR

- 6(d) -

PAROLE WAS UNSATISFACTORY.(RT.⌈1/21/2004⌉ 16-19).  I BELIEVE THAT MY CONSTITUTIONAL
RIGHTS TO A JURY TRIAL AND DUE PROCESS HAVE BEEN DEPRIVED, BECAUSE THE
TRIAL COURT IMPOSED CONSECUTIVE TERMS BY RELYING ON AGGRAVATING FACTORS
FOUND TRUE, NEITHER BY A JURY, NOR BEYOND REASONABLE DOUBT. I BELIEVE THE
SIXTH & FOURTEENTH AMENDMENTS SAFEGUARD ME FROM THE TRIAL JUDGE'S IMPOSITION
OF CONSECUTIVE SENTENCES BASED ON HIS FACTUAL DETERMINATION, THAT WERE
NEITHER ADMITTED BY ME, NOR FOUND TRUE BEYOND A REASONABLE DOUBT BY A JURY,
AND ACCORDINGLY, MY SENTENCE SHOULD BE REVERSED.

    Claim Five: I WAS DEPRIVED OF CONSTITUTIONAL RIGHTS TO A JURY TRIAL
AND DUE PROCESS WHEN TRIAL COURT IMPOSED SEPARATE PUNISHMENTS BASED ON
A FACTUAL DETERMINATION NEITHER ADMITTED BY ME, NOR FOUND TRUE BY A JURY
BEYOND REASONABLE DOUBT.

    Supporting Facts: AT MY SENTENCING HEARING, PROSECUTOR STATED HE HAD
REQUESTED IN A LETTER TO THE COURT, THAT BURGLARY CT BE STAYED PURSUANT
TO PENAL CODE §654, BUT HE WAS WITHDRAWING THE REQUEST AND WANTED ME SENTENCED
TO CONSECUTIVE SENTENCES.(RT.⌈JAN. 21, 2004⌉ 1-2).  UNDER §645 PC, A SINGLE
ACT OR COURSE OF CONDUCT, THAT IS PUNISHABLE IN DIFFERENT WAYS BY DIFFERENT
PROVISIONS OF THE LAW, MUST BE PUNISHED UNDER THE PROVISION THAT PROVIDES
FOR THE LONGEST POTENTIAL FORM OF IMPRISONMENT, BUT IN NO CASE MAY THE
ACT OR CONDUCT BE PUNISHED UNDER MORE THAN ONE PROVISION. THE TRIAL COURT
FOUND THAT I HARBORED MULTIPLE OBJECTIVES: "THE COMMISSION OF A BURGLARY
SUCH AS WHAT APPARENTLY WAS THE PLAN, WHICH WAS TO ENTER INTO CAMBRIDGE
SOUNDWORKS AND TO TAKE OR STEAL HIGH-END ELECTRONICS, COULD HAVE BEEN CONDUCTED
AND MAINTAINED WITHOUT THE NECESSITY OF BINDING AND MOVING THE VICTIMS
INTO THE BACK ROOM, WITHOUT THREATENING THEIR LIVES, WITHOUT TAKING THEIR
IDENTIFICATION AND THREATENING THEIR FAMILY MEMBERS, AND WITHOUT ROBBING
THEM INDIVIDUALLY... COULD HAVE BEEN DONE, ALSO, WITHOUT CUTTING THE TELEPHONE

LINES AND... ATTEMPTING TO DISSUADE THE VICTIMS BY THREATS OF VIOLENCE."(EXHIBIT

1, PAGE 15)  ON APPEAL, THE COURT OF APPEALS UPHELD THE TRIAL COURT'S FACTUAL

DETERMINATION, AND IT'S IMPOSITION OF SEPARATE PUNISHMENTS IN REGARDS TO

THE ROBBERY AND BURGLARY CTS.(EXHIBIT 1, PAGE 16)  THE APPELLATE COURT,

ALSO DENIED MY CLAIM CITING BLAKELY v. WASHINGTON (2004)542 U.S. 296, THAT

THE TRIAL COURT VIOLATED HIS SIXTH AMENDMENT RIGHTS, BECAUSE IN MAKING

THE CHOICE TO IMPOSE SEPARATE PUNISHMENT FOR THE ROBBERY AND BURGLARY,

THE TRIAL COURT RELIED ON A FACTUAL DETERMINATION NEITHER ADMITTED BY ME,

NOR FOUND TRUE BY A JURY BEYOND A REASONABLE DOUBT. (Exhibit 1, pages 17-

18) THE CALIFORNIA SUPREME COURT DENIED REVIEW OF MY BLAKELY CLAIMS, WITHOUT

PREJUDICE TO ANY RELIEF TO WHICH I MIGHT BE ENTITLED AFTER THE U.S. SUPREME

COURT DETERMINES IN CUNNINGHAM v. CALIFORNIA, THE EFFECT OF BLAKELY AND

BOOKER ON CALIFORNIA LAW. (Exhibit 2)  IN THIS CASE, THE TRIAL JUDGE'S

IMPOSITION OF SEPARATE PUNISHMENTS BASED ON HIS FACTUAL DETERMINATIONS,

THAT WERE NEITHER ADMITTED BY ME, NOR FOUND TRUE BEYOND A REASONABLE DOUBT

BY A JURY, VIOLATES MY CONSTITUTIONAL RIGHTS. ACCORDINGLY, MY SENTENCE

SHOULD BE REVERSED.

1        List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3    of these cases:

4    STRICKLAND v. WASHINGTON (1984) 466 U.S. 668; EVITT v. LUCY (1985)

5    469 U.S. 387; JACKSON v. VIRGINIA (1979) 443 U.S. 307; VACHON v. NEW

6    HAMPSHIRE (1974) 414 U.S. 478; PEOPLE v. JOHNSON (1980) 26 CAL 3d 557;

PEOPLE v. LEDESMA (1987) 43 CAL 3d 171

7    Do you have an attorney for this petition?                        Yes_____        No_____ X

8    If you do, give the name and address of your attorney:

9    _____

10        WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13    Executed on ___5/5/2008___                        _____

14                Date                        Signature of Petitioner

15

16

17

18

19

20    (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS            - 7 -

Exhibit 1

Filed 7/11/06  P. v. Sanders CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FIVE

**THE PEOPLE,**

    **Plaintiff and Respondent,**

v.

**RICKY RENEE SANDERS et al.,**

    **Defendants and Appellants.**

**A105385**

**(Alameda County**
**Super. Ct. No. C144018)**

Ricky Renee Sanders and Ceariaco Cabrellis took over a Cambridge Soundworks store in Berkeley, held the employees at gunpoint, robbed them, and removed a truckload of equipment. Both defendants appeal their convictions.

### PROCEDURAL BACKGROUND

A jury found defendants Ricky Sanders and Ceariaco Cabrellis guilty of one count of second degree commercial burglary (Penal Code § 459[1]); two counts of second degree robbery (§ 211); two counts of false imprisonment (§ 236); two counts of attempting to dissuade a witness (§ 136.1, subd. (b)(2)); and one count of cutting a utility line (§ 591). The jury also found several enhancements true.

The trial court sentenced Sanders to nine years eight months in prison and sentenced Cabrellis to 14 years four months.

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

1

## FACTUAL BACKGROUND

### Prosecution Case

At around 11:40 a.m. on Sunday September 15, 2002, David Divjak arrived at his place of work, Cambridge Soundworks in Berkeley. He looked out a window in the bathroom at the back of the store and noticed a U-Haul truck being backed into a parking space in the alley behind the store. At trial, Divjak identified defendant Sanders as the driver of the truck.

Ryan Antonelli, another employee, joined Divjak at the store. After a little while a young man entered the store carrying a gun. The gunman led Divjak and Antonelli to the rear bathroom and took their wallets. He said he was taking the wallets so that he would know who they were and where they lived. He forced them to the floor and tied Antonelli's hands behind his back with plastic ties. A second man entered the bathroom and tied Divjak's hands. The second man said, "Now we have your wallets. You guys need to cooperate with us." When the wallets were eventually recovered after the robbery, money was missing from both. At some point, Antonelli's head was covered with a cardboard box and Divjak's head was covered with a sweater. Divjak could see through the sweater.

At trial, Divjak identified defendant Cabrellis as the second man, whom he referred to as "Mr. Friendly." Mr. Friendly was telling the other robbers which items to take. Divjak and Antonelli told Mr. Friendly how to open the store's safe, and he removed around $1,800 or $2,800. The robbers used dollies to move various merchandise out the back of the store. The retail value of the stolen items was over $78,000.

The robbers left shortly after 1:30 p.m. Divjak tried to dial 911, but the phone line had been cut. He used a different telephone and reported that two or three African-American males had left in a U-Haul truck.

Police pursued a U-Haul truck matching the broadcast description and detained Sanders, who was the driver. The truck was loaded with the stolen Cambridge

2

Soundworks property. At a show-up identification, Divjak said that he was "absolutely positive" that Sanders was the person that he had seen in the U-Haul truck. Antonelli was unable to make an identification because he did not see the faces of anyone other than the gunman.

Subsequently, Divjak viewed two photographic lineups. In the second lineup, which included a photograph of defendant Cabrellis, Divjak identified Cabrellis as "Mr. Friendly." Cabrellis was arrested and interviewed by Detective Chris Stines. Cabrellis claimed he had been with Tami Keathley on September 15 between the hours of 11:00 a.m. and 2:00 p.m. He offered varying accounts of his activities on September 14 and after 2:00 p.m. on September 15.

Cabrellis said that he always had to have an alibi when he went out because people falsely accused him of crimes. He admitted that he had a history of involvement in burglaries and robberies and referred to himself as a "superman" of the field. He claimed that he had not been active for over two years. He said that in the past he used embezzled U-Haul trucks for burglaries and that a typical crew would be three to four people. He said that he never touched guns and that he was a "gentleman type" or "sergeant" who gave orders to others. Cabrellis described himself as a "middleman" who would take orders for merchandise, go obtain the items, and then sell them. He also said he had heard about the Cambridge Soundworks robbery and he described the stolen electronics as "everyday orders."

When the police searched Cabrellis' residence in Sacramento, they found a small notebook listing stereo and electronic equipment. Detective Stines offered his opinion that the list was a pay/owe book for stereo and electronic equipment.

In a police interview Tami Keathley denied being around Cabrellis on the date of the robbery. At trial, Keathley was unsure whether she was with Cabrellis on September 15.

Sanders' Defense

Sanders testified that on September 15 he was in Berkeley at the library. A friend corroborated this story, testifying that she dropped him off at the library a little before

3

1:00 p.m. Afterwards, while walking to a nearby bookstore, he saw men loading a U-Haul truck. One of them offered him $40 to drive the truck; he accepted. He said that the back of Cabrellis' head was similar to that of a man he saw in the alley only from behind, but he was not sure it was Cabrellis.

## Cabrellis' Defense

Dawn Ragsdale and her brother Mark testified that they went out bowling and dancing with Cabrellis the night of September 14. At about 1:00 or 2:00 a.m., they went to eat at Denny's. At the restaurant, Cabrellis ran into a friend, Larry White, and bought a Rolex watch from him. Afterwards, Ragsdale and Cabrellis went to a Holiday Inn in Fairfield. When they got to the hotel Cabrellis inspected the watch, concluded that it was a fake, and told Ragsdale that he was going to return the watch the next day. She left the hotel at 9:00 a.m. on Sunday September 15 and Cabrellis called her at 10:40 a.m. from the hotel. According to the hotel records, the hotel room was vacated before 11:00 a.m.

Larry White testified that he saw Cabrellis at Denny's the night of September 14. He could not recall what time it was, but he went to Denny's after he closed his karate school between 8:30 and 9:00 p.m. He sold Cabrellis a Rolex watch he had purchased in China. The next day, September 15, he got a voicemail from Cabrellis saying that he wanted his money back. Based on his phone records, White testified that he called Cabrellis back at 11:46 a.m. He met Cabrellis at his karate school in Fairfield about 15 minutes later and refunded Cabrellis' money.

Gerardo "Lalo" Ponce testified that on September 15 Cabrellis came to his house in Vacaville, arriving between 11:45 a.m. and 12:30 p.m. Cabrellis stayed for 45 minutes to an hour, during which he made a long phone call. Cabrellis' friend Monte was with him. They left sometime around 1:00 p.m.

Frances Cabrellis, defendant Cabrellis' mother, testified that, based on her phone records, she called Cabrellis at 1:03 p.m. on September 15, asking him to help her move a chair. She lived in Suisun City. Cabrellis was there in 20 to 25 minutes, accompanied by Monte.

4

Lamont "Monte" Norman testified that it was around 10:30 a.m. when they arrived at Frances Cabrellis' home. They stayed for about an hour. Afterwards, they went to the apartment of a woman named April in Suisun, then to Larry White's martial arts business in Fairfield. Cabrellis bought a watch from White. Then they went to Lalo's house in Vacaville, arriving between 12:30 and 1:00 p.m. Cabrellis talked to Tami Keathley on the phone for over an hour. They left between 2:00 and 2:30 p.m.

In cross-examining Tami Keathley during her testimony for the prosecution, Cabrellis' counsel showed her a telephone bill showing a 60-minute phone call to her from Cabrellis on September 15, starting at 11:42 a.m. Keathley's testimony about the call was unclear. She acknowledged that her telephone bill reflected such a call. At first she testified that she did not remember talking to Cabrellis on that date, then she testified that she did talk to him but she did not recall what they spoke about.

Nancy French, Cabrellis' girlfriend and co-habitant and the mother of his child, testified that she contacted Cabrellis on September 15 at 12:51 p.m. and he said he was in Fairfield. He returned home at about 5:00 p.m. with his friend Monte.

Several witnesses testified that Cabrellis has problems with his memory due to a car accident.

## DISCUSSION

### I.    *Cabrellis' Instructional Claims*

Defendant Cabrellis makes three claims of instructional error. We discuss each in turn.

### A.    *CALJIC No. 2.28*

Section 1054.3 requires the defense to disclose to the prosecution the names of witnesses they intend to call, any written or recorded statements by those witnesses, and any real evidence the defense intends to offer at trial. Before trial Cabrellis' counsel did not disclose Ragsdale's written statement nor a number of phone records. At trial she refreshed the recollections of defense witnesses with the undisclosed documents.

5

Under section 1054.5, subdivision (b), a trial court may advise the jury of any untimely disclosure. On the prosecution's request, the trial court instructed the jury using CALJIC No. 2.28: "The prosecution and the defense are required to disclose to each other before trial the evidence each intends to present at trial so as to promote the ascertainment of the truth, save court time and avoid any surprise which may arise during the course of the trial. Concealment of evidence may deny a party a sufficient opportunity to subpoena necessary witnesses or produce evidence which may exist to rebut the non-complying party's evidence. . . . [¶] . . . In this case, the Defendant Cabrellis concealed the following evidence: a one page hand-written statement of Dawn Ragsdale, and the following telephone record exhibits: Defendant B's 2, Defendant B's 3, Defendant B's 7, Defendant B's 10, Defendant B's 11, and Defendant B's 12.[¶] Although the Defendant's concealment was without lawful justification, the Court has, under the law, permitted the production of this evidence during this trial.[¶] The weight and significance of any concealment are matters for your consideration. However, you should consider whether the concealed evidence pertains to a fact of importance, something trivial or subject matters already established by other credible evidence." Defendant contends that instructing the jury with CALJIC No. 2.28 was prejudicial error.

CALJIC No. 2.28 has been criticized repeatedly by the Courts of Appeal. (See *People v. Lawson* (2005) 131 Cal.App.4th 1242, 1247-1248.) Under the reasoning of the cases, the instruction given by the trial court was problematic for several reasons. It falsely informed the jury that Cabrellis was responsible for the violation. There is nothing in the record showing that he bore any responsibility for his counsel's late disclosure. (*People v. Bell* (2004) 118 Cal.App.4th 249, 254-255, 257.) It invited the jury to speculate as to the consequences of violation of the discovery statute, without any information (outside of the prosecutor's argument) that the prosecution was put at an actual disadvantage because of the late discovery. (*Id.* at pp. 255, 257.) It told the jury to evaluate the weight and significance of the discovery violation without providing any guidance on how to do so; in other words, it implied that the jury should "do something" about the violation but gave them no idea what that something should be. (*Ibid.*) It failed

6

to warn the jury that the discovery violation, standing alone, was insufficient to support a guilty verdict. (*Id.* at p. 257.)

For these reasons, "[w]ith rare exception, CALJIC No. 2.28 should not be given without providing the jury some guidance as to how it should consider the discovery violation. The form of this guidance by necessity will differ from case to case. At the very least, it should include a warning that the jury cannot infer a consciousness of guilt from the discovery violation." (*People v. Lawson, supra*, 131 Cal.App.4th at p. 1248.)[2] A warning was especially appropriate here because nothing in the record suggests that Cabrellis, as opposed to his defense lawyer, was responsible for the discovery violation; yet the instruction states "defendant" was responsible for the "concealment." (*Ibid.*) The trial court erred in giving CALJIC No. 2.28.

The error requires reversal of Cabrellis' conviction if is it is reasonably probable that the jury would have reached a result more favorable to him had it not been instructed with CALJIC No. 2.28. (*People v. Bell, supra*, 118 Cal.App.4th at p. 257.)

Cabrellis argues that the jury could have rejected the late-produced phone records as a sanction for the discovery violation.[3] (See *People v. Bell, supra*, 118 Cal.App.4th at p. 257; *People v. Cabral* (2004) 121 Cal.App.4th 748, 753.) That, in turn, would have undermined the testimony of the alibi witnesses who relied on the phone records to refresh their recollections.[4]

---

[2]    New instructions developed by the Judicial Council Task Force on Jury Instructions went into effect in January 2006; Instruction 306 addresses discovery violations in a more narrow and careful fashion.

[3]    The instruction also potentially undermined the testimony of Dawn Ragsdale. However, because she did not testify that she saw defendant at the time of the robbery, her testimony was not critical to Cabrellis' alibi.

[4]    One of the phone records was actually used during the cross-examination of prosecution witness Tami Keathley. When presented with the phone record she eventually stated she spoke to Cabrellis on September 15, starting at 11:42 a.m. However, that testimony was of questionable benefit to Cabrellis because the prosecutor used the evidence of that uninterrupted hour long phone call to undermine Larry White's

7

Cabrellis' defense was built on the four alibi witnesses who testified they saw him during the time of the robbery. Those witnesses were Frances Cabrellis, Larry White, Gerardo Ponce, and Lamont Norman. Only Frances Cabrellis and Larry White used phone records to refresh their recollections regarding the times they spoke to Cabrellis on September 15. Even if we assume that the jury entirely disregarded their testimony due to CALJIC No. 2.28, the testimony of Gerardo Ponce and Lamont Norman was unaffected by the erroneous instruction. The jury rejected the testimony of all four of the alibi witnesses, even though Ponce and Norman were not subjected to any significant impeachment. The jury evidently believed that none of Cabrellis' critical alibi witnesses were reliable and the entire alibi was a fabrication. It is unlikely the outcome would have been different had the jury relied on the phone records because the records themselves were meaningless without reliable testimony explaining their significance.

It is also important to note that Cabrellis' counsel implored the jury not to punish her client for her failure to disclose. She stated, "the DA rightfully criticized me for failing to provide certain evidence sooner than I should have. That was my fault. Not in any way my client's fault. There is absolutely no evidence that my client in any way concealed or delayed in providing any evidence. The evidence does show, to the contrary, that all evidence was provided by the witnesses to either the former attorney or to me. My client has been in custody—in case you haven't noticed—for the entire time. He has not had the power and control over any decisions in this trial. Any mistakes, any errors are mine, and I want to make sure that any mistakes or errors made by me do not reflect in any way on my client. This is far too serious a matter to let any missteps of an attorney affect the proper evaluation and weight of the evidence."

She repeated that plea near the end of her argument, following the prosecutor's objection to her argument that the DA had failed to find anything to impeach the credibility of the alibi witnesses. The trial court sustained the objection and advised the

---

critical testimony that at 11:46 a.m. on September 15 he spoke to and arranged a meeting with Cabrellis.

8

jury that counsel's argument misstated the evidence because, due to the concealment of evidence, the prosecution "has not had an opportunity to properly investigate the backgrounds of your witnesses." The court's statement was inaccurate because the concealment related to the phone records, not to the identity of the witnesses. Cabrellis' counsel then told the jury, "[w]hat the DA would have done, to my understanding, is run records, run a rap sheet, and I'm not aware of any felony convictions. If there were felony convictions, I believe you would have heard of them. And that's what I was trying to say."

As read to the jury, CALJIC No. 2.28 was expressly limited to the phone records and the prior statement by Ragsdale. Moreover, the prosecutor did not emphasize the instruction in his closing argument or suggest that the concealment undermined all of Cabrellis' alibi witnesses. (Cf. *People v. Bell*, *supra*, 118 Cal.App.4th at p. 257.) The prosecutor's only reference to the issue came during his rebuttal, when he stated that had he had the phone records earlier he could have subpoenaed someone from the phone company to explain them.

Finally, in assessing the effect of the erroneous instruction, we consider that the prosecution's case was strong. Divjak repeatedly and confidently identified Cabrellis as "Mr. Friendly." He had ample opportunity to see "Mr. Friendly" face-to-face at a close distance. An expert witness for the defense testified about the problems inherent in eyewitness identification, but the defense did not present anything about Divjak's background to undermine his credibility or suggest that he had a motive to lie.

Moreover, Divjak's identification was corroborated by other evidence. In his police interview, Cabrellis' described a modus operandi for robberies which bore a number of similarities to the Cambridge Soundworks robbery: the use of a U-Haul to carry the stolen goods, the size of the crew, and Cabrellis' role as a "middleman." Cabrellis description of himself as a "gentleman type" fit Divjak's description of Mr. Friendly as polite. Cabrellis' description of himself as a "sergeant" and the discovery of an apparent pay/owe book for stereos and electronics in Cabrellis' residence was consonant with Divjak's description of Mr. Friendly's role instructing others what items

9

to take. Cabrellis' assertion that he needed to have an alibi whenever he left the house certainly must have suggested to the jury that he fabricated an alibi for trial.

We conclude that it is not reasonably probable that the jury would have reached a result more favorable to Cabrellis had it not been instructed with CALJIC No. 2.28.

### B.   *CALJIC No. 3.18*

Defendant Cabrellis contends that the trial court erred in refusing to give several cautionary instructions regarding accomplice testimony. The central instruction is CALJIC No. 3.18, which instructs that incriminating testimony by an accomplice is to be viewed with distrust: "To the extent that an accomplice gives testimony that tends to incriminate [the] [a] defendant, it should be viewed with caution. This does not mean, however, that you may arbitrarily disregard that testimony. You should give that testimony the weight you think it deserves after examining it with care and caution and in the light of all the evidence in this case."[5]

Trial courts are obligated to instruct the jury with the language in CALJIC No. 3.18 or its equivalent " 'whenever an accomplice, or a witness who might be determined by the jury to be an accomplice, testifies.' " (*People v. Box* (2000) 23 Cal.4th 1153, 1208.) Codefendant accomplices who testify are within the scope of the rule. (*Id.* at p. 1209.) The basis for the rule is that an accomplice's testimony is inherently " 'subject to the taint of an improper motive, i.e., that of promoting his . . . own self interest by inculpating the defendant.' " (*Ibid.*) The evidence clearly supported a conclusion that Sanders was an accomplice of Cabrellis. Divjak identified both as coparticipants. The trial court erred in failing to instruct the jury with CALJIC No. 3.18.

Respondent contends that the trial court did not err in failing to instruct with CALJIC No. 3.18 because Sanders' testimony did not incriminate Cabrellis.

---

[5]      The trial court also failed to instruct the defendant with CALJIC Nos. 3.11 and 3.12 regarding the need for corroboration of accomplice testimony. The error was harmless because Divjak's identification of Cabrellis was independent evidence connecting defendant with the crime. (See CALJIC No. 3.12.)

10

Respondent's argument is misplaced. Neither *Box, supra,* 23 Cal.4th 1153 nor *People v. Guiuan* (1998) 18 Cal.4th 558, 569, state that a trial court need only give the instruction where the testimony is incriminating. In fact, *Guiuan* sought to relieve trial courts of the burden of parsing the testimony of an accomplice to determine whether it was favorable or unfavorable; the wording of the instruction leaves it to the jury to determine what, if any, aspects of an accomplice's testimony are incriminating. (*Guiuan,* at p. 569.)

The error requires reversal of Cabrellis' conviction if is it is reasonably probable that the jury would have reached a result more favorable to him had it been instructed to view Sanders' testimony with caution. (*People v. Box, supra,* 23 Cal.4th at p. 1209.)

Sanders' defense was that he was an innocent passerby who was recruited to drive the U-Haul truck. Whether Cabrellis committed the crime was not relevant to the defense. Parts of Sanders' testimony were adverse to Cabrellis. Namely, Sanders testified that the back of Cabrellis' head was similar to that of a man he saw in the alley behind Cambridge Soundworks. Because he only saw the man from behind, he could not say for sure whether it was Cabrellis. But the absence of a cautionary instruction with regard to that testimony could not have prejudiced Cabrellis. The identification was so weak and tentative as to not constitute any identification at all. In closing, Sanders' counsel actually stated that his client "was not able to identify Mr. Cabrellis." The prosecution did not refer to that portion of Sanders' testimony in its closing arguments.

Sanders' testimony that while in jail awaiting trial Cabrellis offered to pay him for testimony and accused him of being a snitch was arguably more damaging than the identification. However, the jury was aware that Sanders had every motivation to make himself look like an innocent victim caught up in another's criminal enterprise. (See *People v. Box, supra,* 23 Cal.4th at p. 1209 [jury knew that codefendants "had every motivation to shift blame to each other"].) Also, Sanders was impeached with evidence of Sanders' forgery conviction. Inasmuch as the jury rejected nearly the entirety of Sanders' testimony in finding him guilty, there is little reason to think that the jury placed significant weight on his testimony about Cabrellis' statements in jail. The prosecution

11

did not use that testimony in arguing Cabrellis' guilt. The only reference to the testimony was in arguing Sanders' guilt.

We conclude it is not reasonably probable that the jury would have reached a result more favorable to Cabrellis had it been instructed with CALJIC No. 3.18. Our conclusion is the same when we consider the instructional errors cumulatively.

      C.    *CALJIC No. 2.62*

Defendant Cabrellis contends that the trial court erred in instructing the jury with CALJIC No. 2.62 because the applicability of the instruction was not expressly limited to defendant Sanders and thus the jury was permitted to make inferences against defendant Cabrellis, who chose not to testify.

The trial court properly instructed the jury that a criminal defendant need not testify, that the jury must not draw any inference from a defendant's decision not to testify, and that a defendant may choose to rely on the state of the evidence and any failure by the prosecution to prove beyond a reasonable doubt every essential element of the charged offenses. The court then instructed the jury with CALJIC No. 2.62: "In this case a defendant has testified to certain matters.[¶] If you find that a defendant failed to explain or deny any evidence against him introduced by the prosecution which he can reasonably be expected to deny or explain because of facts within his knowledge, you may take that failure into consideration as tending to indicate the truth of this evidence and as indicating that among the inferences that may reasonably be drawn therefrom those unfavorable to the defendant are the more probable.[¶] The failure of a defendant to deny or explain evidence against him does not, by itself, warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt.[¶] If a defendant does not have the knowledge that he would need to deny or to explain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain this evidence."

12

Preliminarily, we reject respondent's contention that Cabrellis forfeited his right to appellate review of this claim by failing to object below to the wording of the instruction. A defendant may challenge on appeal any instruction affecting his or her substantial rights, even in the absence of an objection before the trial court. (Pen. Code, § 1259; *People v. Brown* (2003) 31 Cal.4th 518, 539, fn. 7.)

"Challenges to the wording of jury instructions are resolved by determining whether there is a reasonable likelihood that the jury misapplied or misconstrued the instruction." *(People v. Crew* (2003) 31 Cal.4th 822, 848.) In the copy of the instructions given to the jury, CALJIC No. 2.62 is separated by over a half-inch of blank space from the preceding instructions about the right of defendants not to testify. It was clear that the phrase "in this case a defendant has testified" is associated with the language of CALJIC No. 2.62 and not with the preceding paragraphs. (See *People v. Davis* (1995) 10 Cal.4th 463, 542.)

The written instructions contain a handwritten correction changing the first sentence from "[i]n this case defendant has testified" to "[i]n this case *a* defendant has testified." (Italics added.) That change makes it clear that only one of the two defendants testified, and the jury could not have failed to understand that the reference was to defendant Sanders. Immediately thereafter, and not separated by any blank space, follows the language permitting the jury to make inferences from the failure of "a defendant" to explain certain matters. Finally, during closing argument Sanders' counsel indicated that the instruction applied to his client. No one suggested that the instruction was applicable to Cabrellis.

Although it would have been clearer had the trial court used defendant Sanders' name, the only reasonable interpretation of the instruction is that the language permitting the jury to make negative inferences only refers to the testifying defendant Sanders. "Jurors are presumed to be intelligent, capable of understanding instructions and applying them to the facts of the case." *(Conservatorship of Early* (1983) 35 Cal.3d 244, 253.) It is not reasonably likely that the jury understood the instruction as permitting it to make inferences from the nontestifying defendant Cabrellis' failure to explain certain matters.

13

In any event, courts have frequently found that the improper giving of CALJIC No. 2.62 constitutes harmless error because juries are instructed, pursuant to CALJIC No. 17.31, to "[d]isregard any instruction which applies to facts determined by you not to exist." (*People v. Lamer* (2003) 110 Cal.App.4th 1463, 1472.) There was no reference made by the prosecution during closing argument to Cabrellis having failed to explain any matter, nor was there any reference to CALJIC No. 2.62. It is not reasonably probable that a result more favorable to Cabrellis would have been reached in the absence of the alleged error. (*People v. Watson* (1956) 46 Cal.2d at 818, 836.)

II. *Defendants' Section 654 Claims*

Both Sanders and Cabrellis contend that imposition of concurrent sentences for burglary, false imprisonment, and cutting a utility line violated the Penal Code section 654 prohibition of multiple punishment because all of the offenses were the means of facilitating one of two objectives, robbing the store or intimidating the employee witnesses.

Penal Code section 654, subdivision (a) provides in part, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." The statute has been interpreted to apply "when there is a course of conduct which violates more than one statute but constitutes an indivisible transaction." (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.) The purpose of section 654 is to ensure that a defendant's punishment is commensurate with his culpability. (*People v. Perez* (1979) 23 Cal.3d 545, 550-551.) "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) A court may impose multiple punishments where a defendant commits multiple crimes in pursuit of multiple independent, albeit simultaneous, objectives. (*People v. Douglas* (1995) 39 Cal.App.4th 1385, 1393.)

14

The trial court found that Cabrellis and Sanders harbored multiple independent objectives: "[T]he commission of a burglary such as what apparently was the plan, which was to enter into the Cambridge Soundworks and to take the—to steal high-end electronics, could have been conducted and maintained without the necessity of binding and moving these victims into the back room, without threatening their lives, without taking their identification and threatening their family members, and without robbing them individually . . . could have been done, also, without cutting the telephone lines and . . . attempting to dissuade the victims by threats of violence."

The determination of whether the facts and circumstances reveal a single objective within the meaning of section 654 is a factual determination which we review for substantial evidence. (*People v. Saffle, supra,* 4 Cal.App.4th at p. 438.) On the other hand, the "dimension and meaning" of section 654 is a legal question subject to de novo review. (*People v. Perez, supra,* 23 Cal.3d at p. 552, fn. 5.) Accordingly, where the issue is whether the evidence supports the trial court's findings regarding defendants' objectives, our review is for substantial evidence, but where the issue is whether the objectives articulated by the trial court or otherwise ascertainable from the undisputed facts support multiple punishment under section 654, our review is de novo.

### Burglary

Defendants first contend that the trial court should have stayed the sentences on the burglary charge. Defendants rely on *People v. Smith* (1985) 163 Cal.App.3d 908, 912, which referred to "settled law" that section 654 bars punishment for both burglary and robbery "where the sole purpose of the burglary was to effectuate the robbery." In *Smith,* the armed assailants entered a bar and stole money from the register and a bottle of rum. (*Smith,* at p. 910.)

Defendants also rely on *People v. Garrison* (1966) 246 Cal.App.2d 343. There, two armed men surprised a group of people returning from dinner, robbed several of personal property, and ransacked the house belonging to two of the victims. The court held that defendant could not be punished for the burglary in addition to the three counts of armed robbery. (*Id.* at p. 357.)

15

In contrast, here, the trial court found that the objective of the burglary was to steal electronics from the store, while the objective of the robbery was to steal the personal property of the employees and to intimidate them by taking their identification. Those findings are supported by substantial evidence. Further, the objective of stealing from the individual employees was so distinct in nature from stealing merchandise from the store that it was proper to impose a separate punishment under section 654.

*False Imprisonment*

Defendants next contend that the trial court should have stayed the sentences on the false imprisonment charges. We agree. The trial court finding that the burglary could have been "conducted and maintained without the necessity of binding and moving these victims into the back room" is not supported by the record. The defendants were moving electronics out of the store for over an hour; it was necessary to somehow incapacitate the employees so that they would not interfere or escape and raise an alarm.

Defendants' position is supported by *People v. Han* (2000) 78 Cal.App.4th 797, 800, which involved a home invasion robbery during which the victims were tied up and moved into a bathroom. The court stayed defendant's sentence for false imprisonment where defendant was also sentenced for burglary. (*Id.* at pp. 799, 809.) Also instructive is *People v. Foster* (1988) 201 Cal.App.3d 20, 27-28, in which separate punishment for false imprisonment was appropriate where it occurred only after the robbers obtained all the money and where the victims were placed in danger by being locked in a store cooler. The court stated that the act was "analogous to a needless or vicious assault committed after a robbery." (*Id.* at p. 27.) In contrast, the employees in this case were imprisoned while the theft was ongoing and the location of confinement was not inherently dangerous.

Respondent suggests that the objectives of the false imprisonment were to facilitate the theft of store merchandise, to facilitate the robberies, to intimidate them as potential witnesses, and to permit escape. The record supports the conclusion, but these are not independent objectives: all are encompassed within the objectives underlying the offenses of burglary, robbery, and dissuading witnesses.

16

Because the false imprisonment offenses were incidental to the other offenses, the sentences imposed for false imprisonment must be stayed.

### Cutting a Utility Line

Finally, defendants contend that the trial court should have stayed the sentences for cutting a utility line. Again, we agree. Respondent suggests that defendants cut the phone line to facilitate their escape by slowing any attempt to contact the police. And, again, that is not an objective independent of the objectives of the burglary and robberies. Encompassed within defendants' intent to take the store's property and the victims' wallets was an intent to escape from the premises with the property. Cutting the phone line merely facilitated successful completion of the burglary and robberies by delaying notification of the police. No other objective was argued or articulated by the trial court and defendant's conduct was not the type of violent or gratuitous criminal act which may justify separate punishment under the reasoning of *People v. Nguyen* (1988) 204 Cal.App.3d 181, 189-191.

The sentences imposed for cutting the phone line must be stayed.

### III. *On-Bail Enhancements to Cabrellis' Sentence*

Section 12022.1 provides that a two-year enhancement shall be imposed when a defendant commits a felony while on bail and is convicted of felonies in both cases. Cabrellis contends that the trial court erroneously imposed multiple eight-month consecutive terms under section 12022.1. Respondent concedes that all section 12022.1 enhancements must be stricken.[6]

### IV. *Defendants' Blakely Claims*

Cabrellis contends that the trial court erred in imposing the upper term for robbery and consecutive prison terms. Sanders contends that the trial court erred in imposing

---

6    We grant respondent's November 21, 2005, request for judicial notice of the minute order reflecting dismissal of the case for which Cabrellis was on bail.

17

consecutive prison terms and separate sentences rather than staying sentences under section 654. Citing *Blakely v. Washington* (2004) 542 U.S. 296, appellants argue that the court violated their Sixth Amendment rights because in making those choices it relied on facts neither admitted by appellants nor found true by the jury beyond a reasonable doubt. On June 20, 2005, the California Supreme Court held that the imposition of upper term and consecutive sentences under California's determinate sentencing scheme does not violate a defendant's Sixth Amendment rights under *Blakely*. (*People v. Black* (2005) 35 Cal.4th 1238, 1244.) Similarly, because section 654 potentially reduces the defendant's aggregate sentence when it applies and does not increase the statutory maximum term for each separate offense when it does not (see *People v. Cleveland* (2001) 87 Cal.App.4th 263, 270), *Blakely* does not require that the section 654 determination be made by the jury. (*People v. Black*, at pp. 1263-1264.) Accordingly, we deny appellants' *Blakely* claims.

## DISPOSITION

The judgment is modified to stay the sentences imposed on Sanders and Cabrellis for false imprisonment and cutting a utility line, including any enhancements. The stay becomes permanent upon each defendant's service of the remainder of his sentence. All enhancements imposed on Cabrellis pursuant to section 12022.1 are stricken. As so

18

modified, the judgment is affirmed. The trial court shall send a corrected abstract of judgment to the Department of Corrections.

_____

GEMELLO, J.

We concur.

_____

JONES, P.J.

_____

SIMONS, J.

19

Exhibit 2

Court of Appeal, First Appellate District, Div. 5 - No. A105385
**S145838**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

RICKY RENEE SANDERS et al., Defendants and Appellants.

**SUPREME COURT
FILED**

OCT 18 2006

**Frederick** K. Ohlrich Clerk

DEPUTY

Petitions for review denied without prejudice to any relief to which defendant might be entitled after the United States Supreme Court determines in *Cunningham v. California*, No. 05-6551, the effect of *Blakely v. Washington* (2004) 542 U.S. 296 and *United States v. Booker* (2005) 543 U.S. 220, on California law.

George, C. J., and Baxter, J., were absent and did not participate.

**WERDEGAR**

Acting Chief Justice

Exhibit 3

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA        Dept. No. 9

Date: March 22, 2007        Hon. LARRY J. GOODMAN, Judge        Fil R. Cruz, Deputy Clerk.
                                                                Not Reported, Reporter

IN RE
RICKY RENEE SANDERS                          Counsel appearing        No Appearance
                                             for Petitioner

                        Petitioner

vs.                                          Counsel appearing        No Appearance
                                             for Respondent

PEOPLE OF THE STATE OF CALIFORNIA
                        Respondent

Nature of Proceedings:  **ORDER OF THE COURT**
                        **REGARDING PETITION FOR WRIT OF HABEAS CORPUS**

**Case No. 144018A**
**PFN:    AYZ382**
**CEN: 2281239**

This Court, having reviewed the Petition for Writ of Habeas Corpus filed March 22, 2007, **NOW HEREBY**
**ORDERS:** Petition for writ of habeas corpus is denied. The petition fails to state a prima facie case for relief.
Petitioner has not meet his burden in establishing his rights were violated due to ineffective assistance of his trial
and appellate counsel. Petitioner has neither established that his counsel's conduct failed to conform to an
objective standard of reasonable competence, nor has he demonstrated that his counsels' acts or omissions
resulted in prejudiced to him. Further, since Cunningham, the California Appellate Courts have found that
Cunningham is not applicable to the imposition of consecutive sentences, (People v. Hernandez, 2007, 147 Cal
App.4th 1266, 1271-1272).

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause.
I served **ORDER OF THE COURT** by placing copies in envelopes addressed as shown below and then by sealing
and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below,
in the United States mail at Alameda County, California, following standard court practices.

Ricky Renee Sanders
CDC or ID Number V-26524
P.O. Box 705
Soledad, CA
93960-0705

Dated: March 27, 2007

By: _____
        Fil R. Cruz, Deputy Clerk

Writ - Sanders, Ricky Renee

## DECLARATION OF DISCLOSURE
### (PROOF OF SERVICE)

Case Name: Ricky Renee Sanders v. James E. Tilton

Case Number: A105385  (Superior Court Case No. C144018)

I, Ricky Renee Sanders do hereby declare that I served a true
and correct copy of the following document(s) on the Respondent(s)/
Defendant(s), by depositing the document(s) in the legal mail system
at California Training Facility - North, Soledad, on this date:

PETITION FOR WRIT OF HABEAS CORPUS

I placed the above-mentioned document(s) in a sealed envelope,
postage prepaid, addressed as follows:

DEPARTMENT OF JUSTICE
Office of Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-3664

CLERK OF CA COURT OF APPEALS
1ST DISTRICT, DIVISION 5
MARATHON PLAZA - SOUTH TOWER
303 2ND STREET, RM# 600
SAN FRANCISCO, CA 94107-1369

I declare under the penalty of perjury under the laws of the
State of California and the United States, that the above mentioned
is true and correct, as executed on this date:  5/31/07.

_____
RICKY RENEE SANDERS

# EXHIBIT 4

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
FIRST APPELLATE DISTRICT
DIVISION FIVE

In re RICKY RENEE SANDERS on Habeas Corpus.

**FILED**

JUN 1 4 2007

Court of Appeal - Firs. App. Dist.
DIANA HERBERT
By_____
DEPUTY

A117972

Alameda County No. C144018

BY THE COURT:*

The petition for writ of habeas corpus is denied. (*In re Clark* (1993) 5 Cal.4th 750, 782-799 [Grounds 1, 2 and 5]; *In re Swain* (1949) 34 Cal.2d 300, 303-304 [Grounds 1, 2 and 5]; *People v. Duvall* (1995) 9 Cal.4th 464, 474 [Grounds 1, 2 and 5]; *People v. Black* (2005) 35 Cal.4th 1238, 1261-1264, overruled on another ground in *Cunningham v. California* (2007) 549 U.S. __ [127 S.Ct. 856] and vacated sub nom., *Black v. California* (Feb. 20, 2007, No. 05-6793) __ U.S. __ [127 S.Ct. 1210], [Grounds 3 and 4]. The motion for appointment of counsel is denied as moot.

Date____ JUN 1 4 2007 _____          **JONES, P.J.**     P.J.

* Before Jones, P.J., Simons, J. and Needham, J.

Exhibit 5

S154589

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re RICKY RENEE SANDERS on Habeas Corpus

The petition for writ of habeas corpus is denied.

SUPREME COURT
**FILED**

JAN **1 6** 2008

Frederick K. Ohlrich Clerk

_____
Deputy

**GEORGE**
_____
Chief Justice

TO: CLEARK OF THE COURT

I AM INFORMING YOU OF MY NEW ADDRESS
DUE TO MY TRANSFERRING TO ANOTHER PRISON.
   RICKY SANDERS - V2654
: CENTRAL VALLEY MCCF/B4-#46
 BOX 458
MC FARLAND CA 93250

RICKY R. SANDERS
V26524/B4-#46
C. V. MCCF
POBOX 458
MCFARLAND, CA. 93250

**RECEIVE**

MAY 1 3 2008

RICHARD W. WIE
CLERK, U.S. DISTRICT
NORTHERN DISTRICT OF

CLERK
N
PO
SA

LEGAL MAIL



ING
OURT
CALIFORNIA

THE UNITED STATES DISTRICT COURT
THERN DISTRICT OF CALIFORNIA
GOLDEN GATE AVENUE
OX 36060
FRANSISCO, CA  94102