UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

RICKY RENEE SANDERS,

    Petitioner,

vs.

JAMES E. TILTON, Warden,

    Respondent.

No. C 08-2485 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set out below, the petition is denied.

## BACKGROUND

An Alameda County jury found petitioner guilty of one count of second degree commercial burglary, *see* Cal. Penal Code § 459; two counts of second degree robbery, *see id.* § 211; two counts of false imprisonment, *see id.* § 236; two counts of attempting to dissuade a witness, *see id.* § 136.1(b)(2); and one count of cutting a utility line, *see id.* § 591. The jury also found several facts alleged to support enhancements to be true.

Petitioner and a codefendant appealed to the California Court of Appeal, which affirmed the convictions and parts of the sentences, but found errors in some aspects of the sentences. *People v. Sanders*, 2006 WL 1892853, *11 (Cal. App. July 11, 2006). The California Supreme Court denied petitioner's petition for review. The trial court then resentenced petitioner and issued an amended abstract of judgment. *In re Sanders*, 2009

WL 4047863, *1 (Cal. App. Nov. 23, 2009). The California Department of Corrections and Rehabilitation called the court's attention to "numerous" errors in the amended abstract of judgment; on November 6, 2008, the court changed the abstract, increasing petitioner's sentence from seven years, eight months, to nine years, four months. *Id.* Petitioner appealed the November 6, 2008, "resentencing," which had occurred without the presence of petitioner or counsel, and also filed a petition for a writ of habeas corpus. *Id.* The court of appeal granted the writ and ordered the trial court to resentence petitioner with proper notice and in petitioner's presence. *Id.* The appeal of the November 6, 2008, resentencing was subsequently dismissed as moot.

The following statement of the facts of the offense is taken from the opinion of the court of appeal affirming the conviction:

> A jury found defendants Ricky Sanders and Ceariaco Cabrellis guilty of one count of second degree commercial burglary (Penal Code § 459 [FN1: All further statutory references are to the Penal Code unless otherwise indicated.]); two counts of second degree robbery (§ 211); two counts of false imprisonment (§ 236); two counts of attempting to dissuade a witness (§ 136.1, subd. (b)(2)); and one count of cutting a utility line (§ 591). The jury also found several enhancements true.
>
> The trial court sentenced Sanders to nine years eight months in prison and sentenced Cabrellis to 14 years four months.
>
> FACTUAL BACKGROUND
>
> *Prosecution Case*
>
> At around 11:40 a.m. on Sunday September 15, 2002, David Divjak arrived at his place of work, Cambridge Soundworks in Berkeley. He looked out a window in the bathroom at the back of the store and noticed a U-Haul truck being backed into a parking space in the alley behind the store. At trial, Divjak identified defendant Sanders as the driver of the truck.
>
> Ryan Antonelli, another employee, joined Divjak at the store. After a little while a young man entered the store carrying a gun. The gunman led Divjak and Antonelli to the rear bathroom and took their wallets. He said he was taking the wallets so that he would know who they were and where they lived. He forced them to the floor and tied Antonelli's hands behind his back with plastic ties. A second man entered the bathroom and tied Divjak's hands. The second man said, "Now we have your wallets. You guys need to cooperate with us." When the wallets were eventually recovered after the robbery, money was missing from both. At some point, Antonelli's head was covered with a cardboard box and Divjak's head was covered with a sweater. Divjak could see through the sweater.

2

At trial, Divjak identified defendant Cabrellis as the second man, whom he referred to as "Mr. Friendly." Mr. Friendly was telling the other robbers which items to take. Divjak and Antonelli told Mr. Friendly how to open the store's safe, and he removed around $1,800 or $2,800. The robbers used dollies to move various merchandise out the back of the store. The retail value of the stolen items was over $78,000.

The robbers left shortly after 1:30 p.m. Divjak tried to dial 911, but the phone line had been cut. He used a different telephone and reported that two or three African-American males had left in a U-Haul truck.

Police pursued a U-Haul truck matching the broadcast description and detained Sanders, who was the driver. The truck was loaded with the stolen Cambridge Soundworks property. At a show-up identification, Divjak said that he was "absolutely positive" that Sanders was the person that he had seen in the U-Haul truck. Antonelli was unable to make an identification because he did not see the faces of anyone other than the gunman.

Subsequently, Divjak viewed two photographic lineups. In the second lineup, which included a photograph of defendant Cabrellis, Divjak identified Cabrellis as "Mr. Friendly." Cabrellis was arrested and interviewed by Detective Chris Stines. Cabrellis claimed he had been with Tami Keathley on September 15 between the hours of 11:00 a.m. and 2:00 p.m. He offered varying accounts of his activities on September 14 and after 2:00 p.m. on September 15.

Cabrellis said that he always had to have an alibi when he went out because people falsely accused him of crimes. He admitted that he had a history of involvement in burglaries and robberies and referred to himself as a "superman" of the field. He claimed that he had not been active for over two years. He said that in the past he used embezzled U-Haul trucks for burglaries and that a typical crew would be three to four people. He said that he never touched guns and that he was a "gentleman type" or "sergeant" who gave orders to others. Cabrellis described himself as a "middleman" who would take orders for merchandise, go obtain the items, and then sell them. He also said he had heard about the Cambridge Soundworks robbery and he described the stolen electronics as "everyday orders ."

When the police searched Cabrellis' residence in Sacramento, they found a small notebook listing stereo and electronic equipment. Detective Stines offered his opinion that the list was a pay/owe book for stereo and electronic equipment.

In a police interview Tami Keathley denied being around Cabrellis on the date of the robbery. At trial, Keathley was unsure whether she was with Cabrellis on September 15.

*Sanders' Defense*

Sanders testified that on September 15 he was in Berkeley at the library. A friend corroborated this story, testifying that she dropped him off at the library a little before 1:00 p.m. Afterwards, while walking to a nearby bookstore, he saw men loading a U-Haul truck. One of them offered him $40 to drive the truck; he accepted. He said that the back of Cabrellis' head was similar to that of a man he saw in the alley only from behind, but he was not sure it was Cabrellis.

3

*Cabrellis' Defense*

Dawn Ragsdale and her brother Mark testified that they went out bowling and dancing with Cabrellis the night of September 14. At about 1:00 or 2:00 a.m., they went to eat at Denny's. At the restaurant, Cabrellis ran into a friend, Larry White, and bought a Rolex watch from him. Afterwards, Ragsdale and Cabrellis went to a Holiday Inn in Fairfield. When they got to the hotel Cabrellis inspected the watch, concluded that it was a fake, and told Ragsdale that he was going to return the watch the next day. She left the hotel at 9:00 a.m. on Sunday September 15 and Cabrellis called her at 10:40 a.m. from the hotel. According to the hotel records, the hotel room was vacated before 11:00 a.m.

Larry White testified that he saw Cabrellis at Denny's the night of September 14. He could not recall what time it was, but he went to Denny's after he closed his karate school between 8:30 and 9:00 p.m. He sold Cabrellis a Rolex watch he had purchased in China. The next day, September 15, he got a voicemail from Cabrellis saying that he wanted his money back. Based on his phone records, White testified that he called Cabrellis back at 11:46 a.m. He met Cabrellis at his karate school in Fairfield about 15 minutes later and refunded Cabrellis' money.

Gerardo "Lalo" Ponce testified that on September 15 Cabrellis came to his house in Vacaville, arriving between 11:45 a.m. and 12:30 p.m. Cabrellis stayed for 45 minutes to an hour, during which he made a long phone call. Cabrellis' friend Monte was with him. They left sometime around 1:00 p.m.

Frances Cabrellis, defendant Cabrellis' mother, testified that, based on her phone records, she called Cabrellis at 1:03 p.m. on September 15, asking him to help her move a chair. She lived in Suisun City. Cabrellis was there in 20 to 25 minutes, accompanied by Monte.

Lamont "Monte" Norman testified that it was around 10:30 a.m. when they arrived at Frances Cabrellis' home. They stayed for about an hour. Afterwards, they went to the apartment of a woman named April in Suisun, then to Larry White's martial arts business in Fairfield. Cabrellis bought a watch from White. Then they went to Lalo's house in Vacaville, arriving between 12:30 and 1:00 p.m. Cabrellis talked to Tami Keathley on the phone for over an hour. They left between 2:00 and 2:30 p.m.

In cross-examining Tami Keathley during her testimony for the prosecution, Cabrellis' counsel showed her a telephone bill showing a 60-minute phone call to her from Cabrellis on September 15, starting at 11:42 a.m. Keathley's testimony about the call was unclear. She acknowledged that her telephone bill reflected such a call. At first she testified that she did not remember talking to Cabrellis on that date, then she testified that she did talk to him but she did not recall what they spoke about.

Nancy French, Cabrellis' girlfriend and co-habitant and the mother of his child, testified that she contacted Cabrellis on September 15 at 12:51 p.m. and he said he was in Fairfield. He returned home at about 5:00 p.m. with his friend Monte.

Several witnesses testified that Cabrellis has problems with his memory due

4

to a car accident.

Ex. C6 at 1-5.[1]

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

---

[1] Citations to "Ex." are to the exhibits lodged with the court by the respondent.

5

determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## DISCUSSION

As grounds for habeas relief, petitioner asserts that: (1) His trial counsel was ineffective in advising him to admit a previous conviction; (2) trial counsel was ineffective in not moving to dismiss the charges against him arising from the robberies of the individual victims; (3) his appellate counsel was ineffective in not raising the claim that there was insufficient evidence of petitioner's intent to rob the individuals or falsely imprison them; and (4) his Sixth Amendment rights were violated when he was given consecutive sentences based on facts which were not tried to the jury and found beyond a reasonable doubt.

**I.  Ineffective Assistance Claims**

**A.  Trial Counsel**

Petitioner contends that his trial counsel was ineffective in advising him to admit a previous conviction and in not moving to dismiss the charges against him arising from the robberies of the individual victims.

**1.  Standard**

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a

1  reasonable probability that, but for counsel's unprofessional errors, the result of the
2  proceeding would have been different." *Id.* at 694.  A reasonable probability is a probability
3  sufficient to undermine confidence in the outcome.  *Id.*

4  It is unnecessary for a federal court considering a habeas ineffective assistance
5  claim to address the prejudice prong of the *Strickland* test if the petitioner cannot even
6  establish incompetence under the first prong.  *Siripongs v. Calderon*, 133 F.3d 732, 737
7  (9th Cir. 1998).  Similarly, a court need not determine whether counsel's performance was
8  deficient before examining the prejudice suffered by the defendant as the result of the
9  alleged deficiencies.  *Strickland*, 466 U.S. at 697.

### 2. Analysis

Petitioner contends that counsel was ineffective in advising him to admit a prior conviction for forgery.  He asserts that as a result of being found to have committed the prior offense, he is only eligible for good/work time credits up to fifteen percent of his sentence, compared to the fifty percent to which he thinks he is entitled.

As respondent points out, persons convicted of violent felonies are limited to fifteen percent good/work time credits, and robbery, of which petitioner was convicted, is a "violent felony."  *See* Cal. Penal Code § § 667.5(c)(9); 2933.1(a).  In consequence, petitioner is entitled to no more than fifteen percent credits, regardless of what prior convictions he may have suffered.

Petitioner has failed to show that the fifteen percent limitation was the result of counsel's advice to admit the prior, and does not present any other arguments as to how counsel's advice to admit the prior might have been prejudicial.[2]  In the absence of a showing of prejudice, he has not established that the advice constituted ineffective assistance.

Petitioner also contends that counsel was ineffective in not moving to dismiss the charges against him arising from the robberies and false imprisonment of the individual

---

[2] The sentencing court noted that the forgery prior was not a "prison prior" and did not enhance his sentence because of it.  Ex. C-7 at 23.

7

victims.

A lawyer need not file a motion that he knows to be meritless on the facts and the law. Put simply, trial counsel cannot have been ineffective for failing to raise a meritless motion. *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996); *see, e.g., Hebner v. McGrath*, 543 F.3d 1133, 1137 (9th Cir. 2008) (finding counsel's failure to object to admission of defendant's prior sexual misconduct as propensity evidence not ineffective where evidence would have been admitted in any event to show common plan or intent); *Lowry v. Lewis*, 21 F.3d at 346 (failure to file suppression motion not ineffective assistance where counsel investigated filing motion and no reasonable possibility evidence would have been suppressed). *See also Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999) (to show prejudice under *Strickland* from failure to file a motion, petitioner must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him).

Petitioner's argument is that because he was mostly involved in moving merchandise out of the store to the truck, there was insufficient evidence of his involvement in the robbery of the employees whose wallets were taken and in their confinement, so a motion to dismiss the robbery and false imprisonment counts as to him would have been granted.

As respondent points out, there was evidence from which a rational jury could have found that petitioner aided and abetted the robbery and false imprisonment of the individuals, even if he was the person who loaded the truck rather than directly subdued the employees. He wore a Soundworks shirt taken from an employee to help avoid detection as he moved merchandise to the truck; his task of removing the merchandise was eased by having the employees locked up; and he had the employees' identification in the truck, of which he was the sole occupant, when he was stopped. The operation was professional and orchestrated, and petitioner clearly had a major role in it, as he was the one who

loaded the truck and was trusted by the others to be the sole occupant of it, in control of the loot. From these facts a rational jury could have inferred that petitioner was deeply involved in all parts of the crime, and an aider and abetter of the robberies and false imprisonments.

A motion to dismiss the robbery and false imprisonment counts thus would have failed. Counsel was not ineffective in failing to make such a motion.

### B.     Appellate Counsel

Petitioner contends that his appellate counsel was ineffective in failing to argue that there was insufficient evidence to support his convictions for robbery and for false imprisonment.

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland*, 466 U.S. 668. *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989); *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir. 1986). A defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. *Miller*, 882 F.2d at 1434 & n.9 (citing *Strickland*, 466 U.S. at 688, 694; *Birtle*, 792 F.2d at 849).

Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *See id.* at 1434. Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason--because he declined to raise a weak issue. *Id.*

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the

9

evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *id.* at 324. The federal court determines only whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *Id.* at 324. When considering a sufficiency of the evidence claim the Court must "view[] the evidence in the light most favorable to the prosecution," *Jackson*, 443 U.S. at 319, so must assume that the jury believed the prosecution's witnesses.

The evidence discussed in section A(2), above, was sufficient for a rational jury to find that petitioner was guilty of aiding and abetting the robbery and false imprisonment. In consequence, appellate counsel's failure to raise a constitutional sufficiency of the evidence issue was not ineffective assistance.

## II.    **Right to Jury**

Petitioner contends that imposition of consecutive sentences based on facts not tried to a jury and found by it to be true beyond a reasonable doubt violated his Sixth Amendment rights. As a result of the recent United States Supreme Court decision in *Oregon v. Ice*, 129 S. Ct. 711 (2009), declining to extend *Apprendi* to a state's sentencing system that gives judges discretion to determine facts allowing imposition of consecutive or concurrent sentences for multiple offenses, it is clear that this claim is without merit. *See id.* at 717-18.

Petitioner also contends that the issues upon which application of Section 654 depends – whether all of the offenses were merely incident to, or were the means of accomplishing or facilitating one objective, such that he could be found to have harbored only a single intent – should have been submitted the jury and decided by it under the "beyond a reasonable doubt" standard. *See Cunningham v. California*, 127 S. Ct. 856

(2007); *Blakely v. Washington*, 542 U.S. 296 (2004); *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

The rule from *Apprendi* and its progeny is that, "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence [than the statutory maximum] must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Cunningham*, 127 S. Ct. at 863-64.  The relevant statutory maximum "'is not the maximum sentence a judge may impose after finding additional fact, but the maximum he may impose *without* any additional findings." *Id.* at 860 (quoting *Blakely*, 542 U.S. at 303-04).  But in deciding whether a sentence must be stayed under Section 654, the court is not going beyond the maximum that it could impose without further findings; rather, if the additional fact is found – that the defendant had but a single intent – the consequence is a *reduction* in the potential sentence, not an increase.  Furthermore, if deciding that sentences should run consecutively does not violate the *Apprendi/Blakely/Cunningham* rule, as was held in *Ice*, certainly a decision whether to stay the lesser sentence under Section 654 would not; or, at least, it was not unreasonable for the state appellate courts here to so hold.  This claim is without merit.

### III.     Appealability

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability (formerly known as a certificate of probable cause to appeal).  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate must indicate which issues satisfy this standard.  *See id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is

11

straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000).

This was not a close case. For the reasons set out above, jurists of reason would not find the result debatable or wrong. A certificate of appealability will be denied. Petitioner is advised that he may not appeal the denial of a COA, but he may ask the court of appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a), Rules Governing § 2254 Cases.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. A Certificate of Appealability also is **DENIED**. *See* Rule 11(a) of the Rules Governing Section 2254 Cases (eff. Dec. 1, 2009).

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April 19, 2010.

PHYLLIS J. HAMILTON  
United States District Judge

P:\PRO-SE\PJH\HC.08\SANDERS2485.RUL.wpd